UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



August 7, 2020

Stephen F. Shea, Esq.
8730 Georgia Ave, Suite B100
Silver Spring, MD 20910

Jillian E. Quick, Esq.
Special Assistant United States Attorney
Social Security Administration, Ofc. Of General Counsel
6401 Security Blvd., Room 617
Baltimore, MD 21235

Subject:   *Sheri S. v. Saul*
           Civil No.: 1:19-cv-01924-GLS

Dear Counsel:

Pending before this Court are cross-motions for summary judgment. (ECF Nos. 12, 13). In reviewing the Social Security Administration ("SSA" or "the Agency")'s denial of benefits under 42 U.S.C. §§ 405(g) and 1383(c)(3), the Court must uphold the factual findings of the SSA "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "The duty to resolve conflicts in the evidence rests with the ALJ, not the reviewing Court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Therefore, the Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Craig*, 76 F.3d at 589. Put another way, the Court is not assessing whether Plaintiff is disabled, but, rather whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether her/his findings are supported by substantial evidence. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. Local Rule ("L.R.") 105.6. For the reasons set forth below, both Motions are **DENIED** and the SSA's judgment is **REMANDED** for further consideration in accordance with this Opinion.

## I.   BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits on September 9, 2016 and a Title XVI Application for Supplemental Security Income on June 4, 2018. In both applications, Plaintiff alleged disability began May 25, 2016. (Tr. 11). The claim was initially

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

denied on February 8, 2017, and upon reconsideration, denied again on June 15, 2017. (Tr. 106-113). On July 24, 2017, Plaintiff's request for a hearing was granted and the hearing was conducted on July 10, 2018, before an ALJ. (Tr. 33). On July 27, 2018, the ALJ found that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (Tr. 11-27). On April 25, 2019, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr.1-5).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

As defined by the Social Security Act, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A).

In determining whether an individual has a disability, the ALJ follows a five-step sequential evaluation process outlined in the Social Security Act. *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 23 (2003); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart*, 540 U.S. at 24. The Fourth Circuit summarizes the process as follows:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). If a conclusive determination cannot be made after the first three steps, the ALJ must assess the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden for steps one through four. *See id.* at 634. However, if the inquiry proceeds to step five, the burden shifts to the SSA to prove that "the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

Here, the ALJ found that Plaintiff suffered the following severe impairments: mild degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, diabetes mellitus with peripheral neuropathy, mild carpal tunnel syndrome, anxiety, depression, post-traumatic stress disorder, and bipolar disorder. (Tr. 13-14). Recognizing those impairments, the ALJ nonetheless determined that Plaintiff had the RFC to:

> perform light work as defined by 20 CFR 404.1567(b) and 416.967(b), except the claimant occasionally can climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; and she can never work at unprotected heights. The claimant is limited to performing simple, routine, repetitive tasks but not at a production-rate pace (e.g. no assembly line work), and she is limited to simple work-related decisions.

(Tr. 17).

At the hearing before the ALJ, a vocational expert ("VE") testified about whether a hypothetical person with the same limitations as Plaintiff could perform Plaintiff's prior work. (Tr. 66). That hypothetical mirrored the Plaintiff's RFC assessment. (*Id.*). The VE stated that the hypothetical person could not perform that work. (*Id.*). Next, the ALJ asked the VE whether a hypothetical person with the same limitations that the Plaintiff has could perform other work existing in significant numbers in the national economy. (*Id.*). The VE opined that the person could perform other work, e.g., as a marker, a photocopy machine operator, and a router. (Tr. 66-67). Lastly, the ALJ added the caveat that the hypothetical person would be off-task at least 20 percent of the time during a "normal" day. (Tr. 68). The VE stated that "typically if an individual is consistently off-task for approximately 15 percent or more of an eight-hour shift, it would preclude ability to maintain a job, and it wouldn't be allowed." (*Id.*) In considering the RFC and the VE's testimony, the ALJ found that the Plaintiff was not disabled. (Tr. 27).

### III. DISCUSSION

On appeal to this Court, Plaintiff advances the following arguments: (1) the ALJ failed to set forth a narrative discussion on how the evidence supports that Plaintiff can perform "simple, routine, repetitive tasks but not at a production-rate pace," and is "limited to simple work-related decisions." Relatedly, the ALJ erred by not defining "production-rate pace;" (2) the ALJ failed to explain how limiting Plaintiff to simple, routine, repetitive tasks accounts for Plaintiff's moderate limitations-- or any limitation-- in concentration, persistence, or pace in Plaintiff's RFC; (3) the ALJ failed to explain how the step-three finding of Plaintiff's moderate mental functional limitations allows Plaintiff to remain on task for 85 percent of the workday. (ECF No. 12-1, pp. 6-12). The Defendant counters that the arguments raised by Plaintiff lack merit for the following reasons: (1) the limitation to no "production-rate pace" accounted for Plaintiff's moderate limitations in concentration, persistence, or pace, and (2) the ALJ's RFC analysis is conclusive because it is supported by substantial evidence. (ECF No. 13-1, pp. 3-9). For the reasons explained

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

below, the Court agrees with the Plaintiff. Thus, I grant remand under sentence four of 42 U.S.C. §§ 405(g).

When assessing a claimant's RFC, the law requires an ALJ to consider all of the claimant's medically determinable impairments, including any medically determinable impairments that are not "severe." 20 C.F.R. § 416.925(a)(2). The ALJ considers any inconsistencies in the evidence and the extent to which there are any conflicts between a claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4). An ALJ will determine if a claimant's symptoms will diminish his or her capacity for basic work activities, subject to the symptoms being consistent with the objective medical evidence and other evidence. *Id.* An ALJ's RFC determination should include a "narrative discussion describing how the evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (July 2, 1996). The Fourth Circuit has recently held that a "proper RFC analysis has three components: (1) evidence; (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019). *See also Petry v. Comm'r, Soc. Sec. Admin.*, Case No. SAG 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (ALJ should build "an accurate and logical bridge from the evidence to his conclusion").

### A.     Narrative Discussion of RFC Findings

Plaintiff first argues that the ALJ's failure to define the phrase "production-rate pace" ultimately led to an erroneous RFC finding. Relatedly, Plaintiff maintains that the ALJ failed to build a logical bridge between the evidence and the conclusion that Plaintiff can perform "simple, routine, repetitive tasks but not at a production-rate pace," and is "limited to simple work-related decisions." (ECF No. 12-1, pp. 12). Plaintiff relies on *Thomas*, *supra*, *Perry v. Berryhill*, 765 Fed. Appx. 869, 872, 2019 WL 1092627 (4th Cir. 2019), and *Kimberly B. v. Comm'r of Soc. Sec.*, Case No. GLS 17-2913, 2019 WL 1040869, (D. Md. Mar. 4, 2019) to advance her arguments. (ECF No. 12-1, pp. 9-11). In contrast, Defendant argues that the ALJ's decision is supported by substantial evidence because the ALJ defined "production-rate pace" as assembly-line work. (ECF No. 13-1, pp. 8). In support of its arguments, Defendant relies on *Thomas*, *supra*, *Robert M. v. Saul*, Case No. BPG 19-345, 2020 WL 1046046 (D. Md. Mar. 4, 2020), and *Johnson v. Comm'r, Soc. Sec. Admin,* Case No. ADC 17-1819, 2018 WL 2248412 (D. Md. May 16, 2018). (*Id.*) The Court agrees with Defendant.

I find *Thomas* to be controlling here, however Plaintiff's reliance on *Thomas* is misplaced. In *Thomas*, the Court found that the ALJ's denial of the claimant's SSI was not supported by substantial evidence because the ALJ failed to define "production rate or demand pace." 916 F.3d at 309. The Fourth Circuit found that the phrase "production rate or demand pace" is not "especially common—certainly not common enough for us to know what they mean without elaboration." *Id.* at 312. Accordingly, the higher court found the ALJ's failure to define the phrase in the RFC evaluation frustrated the ability to conduct meaningful appellate review. *Id.*

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

The instant case is factually distinguishable from *Thomas*, *supra* because the ALJ explained what constitutes "production-rate pace." (Tr. 17). Thus, even though "production-rate pace" is not an especially common phrase, by including the description, "e.g. assembly line work" immediately thereafter (*Id.*), the ALJ presented a logical bridge to support how the use of the phrase "production-rate pace" accounted for Plaintiff's ability to perform work. *Contra Thomas*, *supra*, at 312 (remand necessary where ALJ did not explain "production rate or demand pace"). Accordingly, the ALJ provided the necessary explanation for this Court's meaningful review.

At issue here is the whether the ALJ articulated how the evidence supports his conclusion that Plaintiff can perform "simple, routine and repetitive tasks but not at a production-rate pace, and [make] simple work-related decisions." The Court finds that the ALJ adequately explained the facts that led to his conclusion. For example, the ALJ cited to medical evidence from a psychological consultant, Dr. Malone, who "opined that [Plaintiff] remained capable of understanding, remembering, and carrying out simple and detailed instructions of two or more steps . . . [and] adapting her behavior to changes in the demands of a work setting or task." (Tr. 24). In addition, the ALJ considered evidence from Plaintiff's psychiatric consultative examination with Dr. Cascella. Dr. Cascella found that Plaintiff "had no formal thought disorder . . . was fully oriented . . . and made no mistakes on the memory task or serial sevens. She scored 30 out of 30 on her mini-mental status examination" to conclude that Plaintiff was able to perform "simple, routine, repetitive tasks but not at a production-rate pace," and is "limited to simple work-related decisions." (Tr. 20). Accordingly, the ALJ's RFC findings are supported by substantial evidence, and remand is not warranted on this basis.

### B.    Limitations in Concentration, Persistence, and Pace

Next, Plaintiff argues that the ALJ failed to provide a logical bridge between his RFC findings and his conclusion that Plaintiff's moderate limitations or any limitation in concentration, persistence, or pace were accounted for. (ECF No. 12-1, pp. 7-8). In support of her argument, Plaintiff relies on *Mascio*, *supra*, and *Jones v. Comm'r, SSA*, Case No. SAG 15-2638, 2016 WL 4687678 (D. Md. September 7, 2016). The Court finds Plaintiff's arguments unavailing. In *Jones*, the court held that ALJ's decision did not explain "why the ALJ believed Ms. Jones to have a 'moderate limitation' instead of 'mild' or 'no' limitation in the ability to concentrate and perform work at a sustained pace for a prolonged period." 2016 WL 4687678 at *3. I find this case to be distinguishable from *Jones* because the ALJ explained the facts that logically supported the moderate mental functional limitation he fashioned. Specifically, the ALJ cites to evidence from two psychological consultants with the State Disability Determination Service (DDS) who determined that Plaintiff's impairments caused moderate limitations in concentration, persistence, or pace. (Tr. 24). Ultimately, the ALJ found Plaintiff had only moderate limitations in concentration, persistence, or pace because "despite these limitations, Dr. Malone opined that [Plaintiff] remained capable of understanding, remembering, and carrying out simple and detailed instructions of two or more steps." (*Id.*)

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

Urging against remand, Defendant relies on *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020) to advance its argument that "substantial evidence supports that Plaintiff—who demonstrated the ability to concentrate and follow simple instructions—could perform the job tasks the ALJ found." (ECF No. 13-1, pp 7). The Court agrees.

I find *Mascio* and *Shinaberry* to be controlling here. In *Mascio*, the appellate court found that the ALJ made several errors in the claimant's RFC findings that led to the denial of the claimant's supplemental security income benefits. Of particular relevance here is the Fourth Circuit's holding that the ALJ erred by not explaining why Mascio's moderate limitation in concentration, persistence, or pace at step three did not translate into the RFC finding. *Mascio*, *supra*, at 638. The court further reasoned that the ALJ does not account for a claimant's limitations in concentration, persistence, and pace by simply restricting a claimant's RFC to simple, routine tasks because the ability to stay on task differs from the ability to perform simple tasks. *Id.* Therefore, the higher court found that the ALJ's deficient explanation frustrated a meaningful review. *Id.* at 633. *Shinaberry* is also instructive because the Fourth Circuit makes clear that it does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry*, *supra*, 121. Rather, the Fourth Circuit held that a limitation to simple tasks **can** account for moderate limitations in concentration, persistence, or pace **if** the ALJ explicitly states **why** a limitation to "simple tasks" is appropriate. *Id.* (emphasis added). The lesson from *Shinaberry*, then, is that the ALJ must explain that despite no mention in a claimant's RFC of her/his limitation in concentration, persistence, or pace, evidence exists to support the notion that the claimant's limitation does not impede his/her ability to stay on task and complete simple tasks. *Id*.

Here, at step three, the ALJ noted that Plaintiff's attention span and concentration were intact, but nevertheless the ALJ found that Plaintiff had moderate limitations in concentration, persistence, or pace. (Tr. 16). As stated previously, the ALJ made this determination in light of evidence from the State medical and psychological consultants' assessments. (Tr. 24). Therefore, the RFC reflects that Plaintiff can perform "simple, routine and repetitive tasks but not at a production-rate pace, and . . . is limited to simple work-related decisions" (Tr. 17), because this restriction accounts for Plaintiff limitation "to "simple and detailed instructions of two or more steps." (Tr. 24). *See Mascio*, *supra*, at 638. Thus, the ALJ's narrative adequately explains which facts logically supported the moderate mental functional limitation that he fashioned. Moreover, the ALJ provided a logical bridge between this limitation and the RFC findings. *Compare Shinaberry*, *supra*, at 122 (finding no error because the ALJ considered the finding at step three that she has moderate limitations in her concentration, persistence, or pace, and explained that Shinaberry's borderline intellectual functioning "support[s] the additional mental limitation restricting the claimant to jobs requiring only simple, routine, repetitive tasks.").

In sum, I find that the ALJ had substantial evidence to support his RFC findings as required by *Shinaberry* and *Mascio*. Accordingly, remand is not warranted on this issue.

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

      C.    <u>Percent of Time on Task</u>

Finally, Plaintiff argues that the ALJ failed to explain how Plaintiff could be productive for 85 percent of the workday, despite her moderate limitations in concentration, persistence, or pace. (ECF No.12-1, pp.14). In support of her argument, Plaintiff relies on *Larry B. v. Commissioner*, Case No. TMD 17-2757, 2018 WL 4913831, (D. Md. Oct. 10, 2018), *Petry v. v. Comm'r, Soc. Sec. Admin.*, *supra; Walters v. Comm'r, Soc. Sec. Admin.*, Case No. SAG 16-415, 2017 WL 211491 (D. Md. Jan. 18, 2017), and *Dolinger v. Comm'r, Soc. Sec. Admin.*, Case No. SAG 16-219, 2017 WL 1078450 (D. Md. Mar. 22, 2017). Defendant contends that the ALJ did not err. (ECF No. 13-1, p. 7).

The Court agrees with Plaintiff, however Plaintiff's reliance on *Larry B.*, *Petry*, *Walters*, and *Dolinger* is misplaced. Plaintiff relies on several cases where the ALJs failed to explain which evidence supported an RFC finding of a limitation to perform work at a percent of time on task or with scheduled breaks. *See Larry B., supra*, at *5 (claimant "limited to carrying out simple tasks in 2-hour increments with 10-15 minute breaks in between"); *Petry*, *supra*, at *1 (claimant "able to perform the following 90 percent of the time: . . . maintain attention and concentration for extended periods; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods"); *Walters*, *supra*, at * 1 (claimant "can perform the following 90 percent of the time: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods"); *Dolinger*, *supra*, at *1 (claimant limited to "work that does not require her to maintain attention and concentration for extended periods or for more than 90 percent of an 8-hour day"). However, in this case, the ALJ did not determine the percent of time Plaintiff would be on task. (Tr. 11-27). Therefore, *Antwan S. v. Saul*, Case No. TMD 18-2891, 2020 WL 869245 (D. Md. Feb.21, 2020) is instructive.

The facts of this case are analogous to *Antwan S*. In *Antwan S.*, the ALJ considered the RFC and the VE's testimony to determine that the claimant was not disabled. The hypothetical posed to the VE didn't include the percentage of time that the claimant would be on and off task. 2020 WL 869245, at *1. However, the court found that the ALJ did not properly evaluate Plaintiff's limitations in concentration, persistence, or maintaining pace, because the decision did not reflect the VE's response that "an employer would tolerate an employee's being off task for only 10% of the workday." *Id.* at *6. The court further reasoned that the finding was erroneous because the ALJ "fail[ed] to explain how, despite [claimant's] moderate limitation in concentrating, persisting, or maintaining pace, he could be productive at least 90% of the time in an eight-hour workday." *Id.*

In this case, the VE opined that "if an individual is consistently off-task for approximately 15 percent or more of an eight-hour shift, it would preclude ability to maintain a job." (Tr. 68). Despite the VE's opinion, the ALJ found that work existed for Plaintiff. What remains unclear is how the ALJ's interpretation of the VE's testimony led him to find that Plaintiff could stay on task

7

*Sheri S. v. Saul*
GLS-19-1924
August 7, 2020

or more than 85 percent of the workday, despite her moderate limitations in concentration, persistence, and pace. The ALJ's narrative does not discuss how the ALJ weighed the VE's testimony and which facts logically support the percentage of time Plaintiff could stay on task. Similarly, the ALJ does not reconcile seemingly inconsistent findings: how does Plaintiff have moderate limitations in concentration, persistence, and pace, yet is also able to stay on task for more than 85 percent of the workday? (Tr. 11-27). Absent clarification, I cannot determine whether Plaintiff's moderate mental functional limitations are consistent with her ability to stay on task. *Compare Antwan S.*, *supra*, at *6 (VE opined that claimant lacked the functional capacity to sustain *any* employment, yet the RFC was silent on considerations of off-task time or unplanned leave.). In sum, because I am unable to ascertain how the RFC accounted for Plaintiff's moderate limitations in concentration, persistence, and pace, I find that the RFC assessment lacks the analysis required of the ALJ, as proscribed by SSR 96-8p. Remand is necessary.

On remand, the ALJ should provide a clearer narrative discussion that incorporates the VE's testimony and Plaintiff's ability to stay on task, and also explains how the evidence supports his conclusions, ensuring that there is an accurate and logical bridge from the evidence to any conclusion made.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 12), is **DENIED** and Defendant's Motion for Summary Judgment, (ECF No. 13), is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further analysis consistent with this opinion. The clerk is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

/s/

The Honorable Gina L. Simms
United States Magistrate Judge